Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 05-34351 (LMW) |
| SANDRO T. GUILLEN, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| AMERICAN EXPRESS CENTURION BANK, | ) | ADV. PRO. NO. | 05-3163 |
| | ) | DOC. I.D. NO. | 24 |
| PLAINTIFF | ) | | |
| vs. | ) | | |
| SANDRO T. GUILLEN, | ) | | |
| DEFENDANT. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Ross M. Chinitz, Esq.                    Attorney for the Plaintiff
Doran & Chinitz
1698 Post Road East
Westport, CT 06880

Sandro T. Guillen                        *Pro Se* Defendant/Debtor
33 Simpson Avenue
Wallingford, CT 06492

## MEMORANDUM AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT (IN PART)

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court is American Express Centurion Bank's ("American Express") Motion for Summary Judgment (A.P. Doc. I.D. No. 24, the "Motion")[1] pursuant to which American Express seeks entry of a judgment for $32,695.22 plus interest, costs, and attorney's fees against the above-captioned debtor (the "Debtor") with respect to a credit card debt (the "Debt") which American Express contends is nondischargeable under 11 U.S.C. § 523(a)(2)(A).[2] This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, J.).[3]

I.  **PROCEDURAL BACKGROUND**

    A.  **The Chapter 7 Case**

The Debtor commenced the instant bankruptcy case by the filing of a chapter 7 petition on September 1, 2005 (as amended by Case Doc. I.D. No. 5, the "Filing Date"). Contemporaneously with the petition, the Debtor filed his schedules and statements (Case Doc. I.D. No. 1, collectively, the "Schedules"). According to the Schedules, on the Filing Date the Debtor (1) had no real property (*see* Schedule A – Real Property); (2) had personal property valued at $23,140.00 (*see* Schedule B – Personal Property); (3) had secured claims of $10,000.00 related to automobile loans (*see* Schedule

---

[1] References herein to the docket of the bankruptcy case appear in the following form: "Case Doc. I.D. No. ____." References herein to the docket of the adversary proceeding appear in the following form: "A.P. Doc. I.D. No. ___."

[2] References herein to title 11 or to the Bankruptcy Code refer to the same as they existed prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. . . . ."

D – Creditors Holding Secured Claims);[4] (4) listed unsecured claims of $85,203.99, $84,832.46 of which was credit card debt (*see* Schedule F – Creditors Holding Unsecured Nonpriority Claims); (5) was separated from his wife, had been a cook at Friendly Ice Cream Corporation for two weeks, and earned a net monthly income of $822.37 (*see* Schedule I – Current Income of Individual Debtor(s)); (6) had monthly expenses of $1,170.00 (*see* Schedule J – Current Expenditures of Individual Debtor(s)); and (7) earned $35,115.50 in 2003, $10,953.92 in 2004, and $8,000.00 in 2005 up to the Filing Date (*see* Statement of Financial Affairs, item 1).

On December 8, 2005, an order entered granting the Debtor his chapter 7 discharge (*see* Case Doc. I.D. No. 9) and on November 8, 2006, the chapter 7 trustee filed her Report of No Distribution (*see* Case Doc. I.D. No. 11).

### B.    The Adversary Proceeding

On December 1, 2005, American Express commenced the instant adversary proceeding by the timely filing of that certain Complaint To Determine Dischargeability of Debt (A.P. Doc. I.D. No. 1, the "Complaint"). In addition to a determination of nondischargeability with respect to the Debtor, the Complaint also seeks interest on the Debt (Complaint at 5) and attorney's fees and costs pursuant to the Agreement (as defined below) (Complaint ¶ 3). Although the Complaint was duly served upon the Debtor (*see* A.P. Doc. I.D. No. 10), he has failed to plead or otherwise defend in this adversary proceeding. However, a debtor who is named as a defendant in an adversary proceeding that arises in the bankruptcy case is always deemed to have appeared in the adversary proceeding. *Cf. Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 867 (B.A.P. 2d Cir. 1997). Because

---

[4]    The Debtor stated an intent to surrender the subject vehicles in the bankruptcy proceeding.  (*See* Schedules (Chapter 7 Individual Debtor's Statement of Intention).)

the Debtor failed to respond to the Complaint, all of the allegations of the Complaint are deemed admitted. *See* Fed. R. Civ. P.(8)(d).[5]

On or about January 11, 2006, American Express served written interrogatories, requests for admission (the "Request for Admission") and requests for production of documents (collectively, the "Discovery Demands") on the Debtor and required responses by February 11, 2006. (*See* Rule 56 Statement (as defined below) ¶¶ 7-8.) The Debtor did not respond to the Discovery Demands. (*See id.* ¶ 9.) Since the Debtor failed to respond to the Request for Admission, "[e]ach matter of which an admission . . . [was] requested . . . is admitted . . . [and] is conclusively established" for purposes of this adversary proceeding. Fed. R. Civ. P. 36(a), (b) (made applicable here by Fed. R. Bankr. P. 7036).

American Express filed the Motion on June 30, 2006. In support of the Motion, American Express filed (1) a Local Rule 56(a)1 Statement (the "Rule 56 Statement"); (2) an affidavit (the "First Affidavit");[6] (3) an Affidavit of Non-Military Status; (4) the Discovery Demands; and (5) a memorandum of law (A.P. Doc. I.D. No. 26, the "Memorandum"). Since the Debtor did not respond to the Rule 56 Statement, all "material facts set forth in said statement and supported by the evidence" are deemed admitted for purposes of summary judgment. *See* D. Conn. L. Civ. R. 56(a)1.

---

[5] **Effect of Failure to Deny.** Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading . . . . .

*Id*. Rule 8(d) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7008(a).

[6] The First Affidavit is made by Louise Turner, an attorney-in-fact for American Express. She maintains the books, records and files pertaining to "bankrupt accounts," including the Debtor's account, and supervises employees working on such accounts. (*See* First Affidavit ¶ 1.)

- 4 -

On October 25, 2006, the court issued that certain Order Scheduling Hearing on Motion for Summary Judgment (A.P. Doc. I.D. No. 28, the "Order") wherein the court "deem[ed] it appropriate to schedule the Motion for a hearing to afford the Debtor (who is *pro se* in this adversary proceeding but not in the chapter 7 case) a final opportunity to appear and be heard." (Order at 2.) Therefore, a hearing (the "Hearing") was scheduled for November 8, 2006. (*See id.*) On October 27, 2006, a copy of the Order was served upon the Debtor (*see* A.P. Doc. I.D. No. 29). The Debtor did not appear at the Hearing and the court took the Motion under advisement.[7] On May 14, 2007, the court issued a certain Order Permitting Supplementation of Record (A.P. Doc. I.D. No. 35) wherein the court permitted the Plaintiff to submit further evidence in support of the Motion. (*See id.*) The Plaintiff responded by submitting an affidavit (the "Second Affidavit"),[8] to which was annexed a customer demographic sheet, the relevant account statements (the "Statements"), and the account agreement (as updated in September, 2003, the "Agreement"). The Motion is now ripe for decision.

## II. SUMMARY JUDGMENT

Summary judgment "is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999). *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P. 7056).

---

[7] Subsequently, the court determined that the Motion was not served in accordance with D. Conn. L. Civ. R. 56(b) which imposes specific notice requirements for *pro se* parties on motions for summary judgment, including instructions on how to oppose such motions. Consequently, on January 11, 2007, the court issued that certain Order Requiring Compliance with D. Conn. L. Civ. R. 56(b). (*See* A.P. Doc. I.D. No. 31.) American Express has complied with the local District Court rule. (*See* A.P. Doc. I.D. Nos. 32, 33.)

[8] The Second Affidavit, like the First Affidavit, was sworn to by Louise Turner. (*See* note 6.) The First Affidavit and the Second Affidavit are referred to collectively as the "Affidavits."

The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case.").

As previously noted, the Debtor did not file any papers in response to the Motion. However, "[e]ven when a motion for summary judgment is unopposed, the . . . court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). Summary judgment may not be granted solely because the Motion is unopposed. *Id*. at 244.

Summary judgment is appropriate under the circumstances here if (1) the court "examin[es] the moving party's submission to determine . . . [that] it has met its burden [of production] of demonstrating that no material issue of fact remains for trial" and (2) "the undisputed facts . . . show that the moving party is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 244 (citation and internal quotation marks omitted). The court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement . . . [but] must be satisfied that the citation to evidence in the record supports the assertion[s]" made in the motion papers. *Id.*

Pursuant to D. Conn. L. Civ. R. 56(a)1, the facts of the Rule 56 Statement are deemed admitted. Further, as determined above, the allegations of the Request for Admission and the Complaint similarly are deemed admitted. *See supra* at 4. The court further notes that the allegations deemed admitted are amply supported by the record. (*See, e.g.,* Statements, Agreement, and the Affidavits.) Therefore, the court concludes that American Express has established that there are no disputed issues of material fact remaining for trial as to the nondischargeability of the Debt

in the aggregate amount of the Charges (as defined below) and also as to the Fees (as defined below) in an amount to be determined.

**III.    FACTS**

Based on the facts deemed admitted by the Complaint, the Request for Admissions, and the Rule 56 Statement, the following facts have been established:

- In or about March, 2000, the Debtor opened an account (the "Account") with American Express for a "Rewards Plus Gold" card (the "Card"). The Card had "no pre-set spending limit." (*See* Agreement at 1.)[9]

- Between September, 2004 and January, 2005, the Debtor made one charge of $155.00 on the Account. (Memorandum at 15.) There was, however, a previous outstanding balance on the Account of $11,353.16. (*See* Statements (with 3/14/05 Closing Date).)

- Between February 19, 2005 and March 2, 2005, twenty three (23) charges (the "Charges") totaling $26,717.02 were made to the Account. (*See id*.) That amount included the following Charges:

| Date | Charge Amount | Description |
| --- | --- | --- |
| 2/24/05 | $6,391.80 | "Jewelry Stores" charge at Harstans Jewelers[10] |

---

[9]    There appears to have been at least one additional Card member with access to the Account. (*See* Statements.) However, the evidence before the court indicates that only the Debtor used the Card during the relevant period. (*See id*.) In any event, the Debtor remained responsible for any and all charges to the Account. (*See* Agreement at 1.)

[10]    The court notes that the Debtor did not list any jewelry on his Schedules. (*See* Schedules (Schedule B – Personal Property).)

- 7 -

| | | |
|---|---|---|
| 2/24/05 | $ 326.92 | "Athletic Apparel Stores" charge at Clinton Factory Store |
| 2/26/05 | $6,487.20 | "Jewelry Stores" charge at Harstans Jewelers |
| 2/28/05 | $1,207.75 | "General Merchandise" charge at Polo Factory Store |
| 2/28/05 | $2,491.00 | "Sales/Service Repair" charge at Wallingford Buick |
| 2/28/05 | $ 878.53 | "Automotive Tire Stores" charge at Town Fair Tire |
| 2/28/05 | $ 424.64 | "Automotive Tire Stores" charge at Town Fair Tire |
| 2/28/05 | $ 545.13 | "Continental Airlines" charge at Continental Airlines |
| 3/1/05 | $ 796.32 | "Modern Separates" charge at Filene's |
| 3/2/05 | $6,195.00 | "Equipment Sales" charge at Allen Pricision |

(*See* Statements (with 3/14/05 Closing Date).)

- On or about March 14, 2005, the balance on the Account was $38,607.71 and the minimum amount due was $2,661.20. (*See id*.)

- Between March 14, 2005 and the Filing Date, the sum of $6,011.75 representing finance charges, delinquency fees, and late fees (collectively, the "Fees") was applied to the Account. (*See* Rule 56 Statement ¶ 6m; Second Affidavit ¶ 21.) Two credits totaling $33.55 also were applied to the Account. (*See* Rule 56 Statement ¶ 6n; Second Affidavit ¶ 21.)

- After incurring the Charges to the Account, the Debtor did not make a single payment on the Account (*see* Second Affidavit ¶ 24) and commenced the instant bankruptcy case six months later.

- The balance on the Account on the Filing Date was $44,048.38. (*See* Rule 56 Statement ¶ 10f.) However, American Express contends that only $32,695.22[11] of that amount was incurred through fraud. (*See* Rule 56 Statement ¶¶ 6cc - 6hh; Second Affidavit ¶ 34-36.)

IV.    **DISCUSSION**

    A.    **Nondischargeability under Bankruptcy Code § 523(a)(2)(A)**

        1.    **Legal Standard**

Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt— for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C.A. § 523(a)(2) (West 2005). In order to prove a prima facie case under § 523(a)(2)(A), American Express must prove by a preponderance of the evidence that: (1) the Debtor made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving American Express; (4) upon which representations American Express actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by American Express. *Am. Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738, 745 (Bankr. D. Conn. 2002).

---

[11]    That amount represents $26,717.02 (the Charges) plus $6,011.75 (the Fees) less $33.55 (the amount credited to the Account). Consequently, the remaining balance on the Account ($11,353.16) is discharged.

Since intent to defraud is rarely proven by direct evidence, the court must assess the totality of the circumstances including: (1) time elapsed between the charges and the bankruptcy filing; (2) whether the debtor consulted an attorney with respect to the filing of bankruptcy prior to incurring the subject charges; (3) number and amount of charges; (4) financial condition of debtor when the charges were incurred; (5) if the charges exceeded the credit limit; (6) if multiple charges were incurred on the same day; (7) if the debtor was employed (and if not, the debtor's prospect for employment); (8) the debtor's financial sophistication; (9) if there were any sudden changes in the debtor's spending habits; and (10) if charges were made for the purchase of luxury items or necessities. *See Citibank USA, N.A. v. Spring (In re Spring)*, No. 04-3007, 2005 WL 588776, at *4 (Bankr. D. Conn. March 7, 2005); *Truong*, 271 B.R. at 746.

### 2. **Application of Law to Fact**

Each use of the Card by the Debtor constituted a representation of an intent to pay each Charge. *See Spring, supra* at *4; *Truong*, 271 B.R. at 745. Such representation is false if it is made without that intent. *See Spring*, *supra* at *4. Over seven days, the Debtor made twenty two (22) Charges totaling $26,337.81 to the Card.[12] Three of those charges were for sums of over $6,000.00 each and totaled $19,074.00. There were charges for luxury items, including jewelry for $12,879.00, and multiple charges were incurred on the same day. Moreover, prior to the Charges, the Debtor used the Card once over a five-month period and charged only $155.00 on that occasion. The record reflects that the Debtor was in poor financial condition when the Charges were made. Up to the Filing Date (i.e., September 1, 2005), the Debtor had earned $8,000.00 in 2005, total gross income of $10,953.92 in 2004 and $35,115.50 in 2003. (*See* Schedules *supra*.) On the Filing Date, the

---

[12] There was a single additional Charge of $379.21 to the Card on February 19, 2005. That Charge combined with the other Charges of $26,337.81 totaled $26,717.02.

Debtor had been employed for two weeks and his monthly expenses exceeded his monthly income by $347.63. (*See* Schedules *supra*.) After his seven-day shopping spree, the Debtor never made a single payment on the Account. The evidence supports a finding that at the time the Charges were incurred the Debtor lacked the ability to pay[13] even the minimum monthly payment[14] on the Account. Thus, based on the foregoing, the court concludes that American Express has made the requisite showing that the Debtor knew that he was unable to and did not intend to pay the Charges and intended to deceive American Express.[15]

Actual reliance is established by a showing by American Express that it would not have approved the Charges in the absence of the Debtor's representation to pay such Charges. *Spring,* 2005 WL 588776, at *5. The court finds that based on the record before it, American Express has made the requisite showing of actual reliance.

In order to show that it justifiably relied on the Debtor's representation, American Express must show that based on its initial credit screening and the ensuing credit relationship with the Debtor, no red flags were raised that would require American Express to conduct further

---

[13]    This court has rejected the view that each use of a credit card is a representation of a debtor's ability to pay the incurred charges. *See Spring, supra* at *4 n.8; *Truong*, 271 B.R. at 746 n.14. However, the inability to pay at the time the card is used is some evidence of a lack of intent to pay where the debtor is aware of his financial condition and knew that he could not make even the minimum monthly payment on the Card. *Id. See also* Request for Admission ¶ 38 (admitting a lack of ability to pay pursuant to the Agreement).

[14]    The minimum payment due after the Charges was $2,661.20. (*See* Statements (with 3/14/05 Closing Date).) Because of the Fees added to the account, that minimum payment increased over subsequent months to $8,176.87. (*See* Statements (with 8/14/05 Closing Date).)

[15]    Questions of intent ordinarily are ill-suited for summary judgment. However, the Debtor failed to plead or otherwise defend in this action. The Motion, therefore, is in substance a motion for default judgment as opposed to a motion for summary judgment. Consequently, little purpose would be served by requiring American Express to proceed to trial.

investigation. *See id.* Based on the record before the court, the Debtor has a history with American Express of incurring and repaying the amounts charged to the Card. (*See* Second Affidavit ¶ 18.) Nothing in the payment history of the Debtor indicated that he would make the Charges without a single payment on the Account. The Debtor had never previously defaulted on the Account, nor was the Account in default when the Charges were incurred. (*See* Second Affidavit ¶¶ 26, 30.) Furthermore, after the Charges were made, American Express received confirmation from the Debtor that he was employed at "GJ Drywall" earning an annual income of $65,000.00.[16] (*See* Second Affidavit ¶ 28.) Around the same time, American Express also obtained a credit report on the Debtor which reflected a credit score of 702. (*See* Second Affidavit ¶ 29.) Thus, even if American Express had undertaken an investigation prior to approving the Charges (which was not required of it), the result would not have provided any warning that the Debtor was at risk for default in the future. Therefore, the court concludes that American Express has made the requisite showing that its reliance on the Debtor's representations was justifiable and that such reliance was the proximate cause of American Express' damages. *See Truong*, 271 B.R. at 748 n.17 ("If [a plaintiff] makes a prima facie case as to its justifiable reliance on the [d]ebtor's misrepresentation of intent to pay, as a matter of law it also would make a prima facie case that its loss was proximately caused by such reliance.").

### B.  Damages, Interest, Costs, and Attorney's Fees

As previously noted, the Complaint seeks a determination that a debt owing to American Express in the amount of $32,695.22 is nondischargeable under § 532(a)(2)(A). The Charges

---

[16] The Debtor's employment at the time of the Charges cannot be ascertained from the record. However, the fact that the Schedules list an income of $8,000 from January 1, 2005 through September 1, 2005 leads the court to find the Debtor's employment representation highly suspect, if not outright false.

themselves comprise $26,717.02 of that amount. The remainder represents the aforementioned Fees of $6,011.75 less $33.55 in credits, resulting in a total of $5,978.20. The court concludes that the $26,717.02 in damages based strictly on the Charges was not discharged in this case pursuant to § 523(a)(2)(A). However, the damages based on the Fees include finance charges and late fees which appear to be calculated as a percentage of the entire balance on the Account. (*See* Statements.) As noted above, a portion of the balance on the Account (totaling $11,353.16) was discharged in the corresponding chapter 7 case. (*See* note 11.) Therefore, any finance charges or other fees based upon that portion of the balance were also discharged. Accordingly, at this time the court is unable to conclude that the alleged damages of $5,978.20 based upon the Fees is nondischargeable under Section 523(a)(2)(A). However, the court will grant American Express thirty (30) days from the date of this decision (i.e., through August 6, 2007) to submit an affidavit detailing the Fees which pertain only to the nondischargeable portion of the Debt.[17]

As noted, the Complaint seeks interest and costs. The court exercises its discretion to award prejudgment interest on $26,717.02 plus prejudgment interest on the amount of the Fees (if any) substantiated as aforesaid from December 1, 2005 at the rate applicable as of such date under 28 U.S.C. § 1961. *Cf. Hirsch v. Union Trust Co. (In re Colonial Realty Co.)*, 229 B.R. 567, 577 (Bankr.

---

[17] The affidavit must detail the relevant interest rates charged and the corresponding finance charges applied solely to the $26,717.02 in Charges. Insofar as late fees and/or any other fees were calculated as a percentage of the balance, a similar itemization of such charges is also required. The affidavit must include such itemization for all statement periods between when the Debtor incurred the Charges and the Filing Date. Failure to submit a timely affidavit or the submission of an insufficient affidavit will result in a denial of the Motion for Summary Judgment as to the damages arising from the Fees.

D. Conn. 1999). American Express' request for costs is granted.[18] The request for attorney's fees is denied.[19]

## V. CONCLUSION

Based upon the foregoing and upon the record, the court concludes that American Express has successfully carried its summary judgment burden with respect to all elements of Bankruptcy Code § 523(a)(2)(A). As to the $26,717.02 in Charges found nondischargeable, the Motion is granted. As to the $5,978.20 in Fees, the court's decision is deferred until such time as American Express submits (or fails to submit) a timely affidavit in satisfaction of this order.[20] Interest and costs are granted in accordance with this opinion.

It is **SO ORDERED.**

Dated: July 6, 2007                                        BY THE COURT

                                                                 Lorraine Murphy Weil
                                                                 United States Bankruptcy Judge

---

[18] American Express shall file and serve on the Debtor an itemized application for statutory costs on or before August 6, 2007. Objection to such application, if any, must be filed and served on or before August 16, 2007.

[19] American Express has not properly pled a claim for attorney's fees in the Complaint. *See* Fed. R. Bankr. P. 7008(b) ("A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third party complaint, answer, or reply as may be appropriate.").

[20] Entry of any judgment on the Motion also is deferred until that time.